**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WHEEL PROS, LLC,**

        **Plaintiff,**

v.                                            **Case No: 6:22-cv-2171-PGB-EJK**

**RHINO TIRE USA, LLC,**
**QINGDAO RHINO**
**INTERNATIONAL CO., LTD.**
**and QINGDAO RHINO INT'L**
**CO., LTD,**

        **Defendants.**
_____/

## ORDER

      This cause comes before the Court on Plaintiff Wheel Pros, LLC's Motion to Strike Defendants' Affirmative Defense (Doc. 20 (the "**Motion**")) and Defendants Rhino Tires USA, LLC, Qingdao Rhino International Co., Ltd., and Qingdao Rhino International Co., Ltd.'s response thereto (Doc. 27). Upon consideration, the Motion is due to be granted in part.

**I.     BACKGROUND**[1]

      This dispute stems from the alleged infringement of Plaintiff's "Black Rhino Wheels" trademarks through Defendants' sale of their "Rhino Off-Road" and

---

[1] This account of the facts comes from the Plaintiff's Complaint. (Doc. 1). At this procedural posture, the Court accepts the well-pled factual allegations therein as true when considering motions regarding the sufficiency of the pleadings. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

"Rhino" wheels, tires, and related products with associated trademarks. (Doc. 1). Plaintiffs began to sell their "Black Rhino" products in 2003 and registered the trademarks at issue by 2007 at the latest whereas Defendants registered their trademarks by 2011 at the earliest. (Doc. 1, ¶¶ 13, 79, 85, 91, 97; Doc. 1-1; Doc. 1-2; Doc. 17, p. 6; Doc. 18, p. 6).[2] [3]

On November 21, 2022, Plaintiffs filed their Complaint, alleging several infringement claims in violation of The Lanham Act and Florida common law as well as unfair competition and deceptive/unfair trade practices claims in violation of Florida law. (Doc. 1). In addition, Plaintiff seeks the cancellation of four of Defendants' trademarks under 15. U.S.C. § 1119. (*Id.* ¶¶ 76–99). On December 20, 2022 and January 5, 2023, Defendants filed their Answers (Docs. 17, 18), which do not explicitly allege Defendants are the senior users of the trademarks at issue or assert any counterclaims seeking to cancel Plaintiffs' properly registered marks. (Doc. 17, p. 6; Doc. 18, p. 6). The Answers assert, however, several affirmative defenses, including "Defendant has been selling goods that are in the natural zone of expansion, as related to its 'Rhino' brand of tires, wheels, hubs, or related accessories." (Doc. 17, p. 6; Doc. 18, p. 6).[4]

---

[2] *See also* Defendants' federal trademark registration priority dates of December 20, 2020 (Reg. No. 6,869,079), August 1, 2019 (Reg. No. 6,162,889), November 20, 2012 (Reg. No. 4,484,498), and June 20, 2011 (Reg. No. 4,181,512)—all of which are subject to judicial notice.

[3] It is unclear from the pleadings when Defendants began to use their trademarks.

[4] As the respective affirmative defenses from Defendant Rhino Tire USA, LLC and Defendant Qingdao Rhino Int'l Co., LTD are identical and defended with the same response in opposition by identical counsel, the Court will treat them as one.

Consequently, Plaintiff filed the instant Motion to strike the aforementioned affirmative defense (Doc. 24), and Defendants timely responded in opposition (Doc. 27). As such, this matter is ripe for review.

## II.  STANDARD OF REVIEW

Affirmative defenses are subject to Federal Rule of Civil Procedure 8, which demands a "short and plain" statement of those defenses. Although the court has broad discretion in ruling on motions to strike, the court may only strike an affirmative defense when it is "insufficient as a matter of law." *Microsoft Corp. v. Jesse's Computs. & Repair, Inc.*, 211 F.R.D. 681, 683–84 (M.D. Fla. 2002) "While an answer need not include a detailed statement of the applicable defenses, a defendant must do more than make conclusory allegations. If the affirmative defense comprises no more than bare bones conclusory allegations, it must be stricken." *Id.* at 684 (internal quotations and citations omitted).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Although the court has broad discretion in ruling on motions to strike, the court may only strike an affirmative defense when it is "insufficient as a matter of law." *Microsoft*, 211 F.R.D. at 683 (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)); *see also Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 779 (11th Cir. 1982) (affirming the striking of a defendant's affirmative defense as it was "legally insufficient").

An affirmative defense will be held insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law. *Anchor Hocking*, 419 F. Supp. at 1000. Generally, such motions are disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). However, where a defense "might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action . . . [it] should be deleted." *Id.*; *see also Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Nevertheless, in most situations when striking an affirmative defense, courts provide leave for defendants to replead unless to do so would be futile or unnecessary. *See e.g.*, *Romero v. Southern Waste Sys. LLC*, 629 F. Supp. 2d 1356 (S.D. Fla. 2009).

### III. DISCUSSION

The Court ultimately finds that Defendant must either clarify its third affirmative defense or drop it altogether. As written, it is at best ambiguous what effect "Defendant has been selling goods that are in the natural zone of expansion, as related to its 'Rhino' brand of tires, wheels, hubs, or related accessories" will have on the suit. (Doc. 17, p. 6; Doc. 18, p. 6). As Plaintiff notes, there are at least some interpretations of this affirmative defense which are foreclosed to Defendants as they would be insufficient as a matter of law, but because

4

Defendants may be able to clarify their intent and plead properly, the Court will provide leave for Defendant to replead.

Crucially, it is not clear from the third affirmative defense whether Defendants are asserting they are, in fact, the senior users of their marks rather than Plaintiff. This is important because ownership of a distinctive mark is not only limited by when it is federally registered but also by priority of usage based on time:

> The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market. Junior users, who subsequently use the same or similar mark on similar products or services, may also establish common law rights to perhaps even the same mark provided there is no competitive overlap with the senior user. The senior user, however, may enjoin such uses that infringe upon its prior rights. The extent of the senior user's rights in the mark are also governed by a few additional principles.

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989) (citations and quotations omitted). Without a federal trademark registration, "[a] senior user's rights also are geographically limited to only those territories in which it actually uses its mark or into which it might naturally expand (the 'zone of natural expansion')." *Id.* at 1023. With federal registration, however, a senior user "enjoys the unlimited right to use the mark[s] nationwide, and federal registration affords the registrant priority over all future users of **confusingly similar** marks." *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010) (emphasis added) (*citing* 15 U.S.C. § 1057(c)).

Here, Plaintiff has by Defendants' admission federally registered its marks prior to Defendants. (Doc. 1, ¶¶ 13, 79, 85, 91, 97; Doc. 1-1; Doc. 1-2). It is unclear,

however, from the Answers when Defendants began to use their marks and thus whether Defendants are asserting any rights as senior users of those marks. (*See* Docs. 17, 18). Defendants' response in opposition to the Motion is also murky on this front. (*See* Doc. 27). Plaintiff argues Defendants are foreclosed from asserting they are the senior users as Defendants did not expressly plead their status as such nor assert any counterclaims. (Doc. 20, p. 12). But the Court finds that if this is Defendants' intent, they can make it plain through repleader.

    Which party enjoys status as senior user is critical because:

> The senior user's rights may extend into uses in "related" product or service markets (termed the "related goods" doctrine). Thus, an owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of the mark on such related uses. The doctrine gives the trademark owner protection against the use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.

*Tally-Ho*, 889 F.2d at 1023 (citations and quotations omitted). Moreover, "[w]hen a senior user of a mark on product line A expands later into product line B and finds an intervening user, priority in product line B is determined by whether the expansion is 'natural' in that customers would have been confused as to source or affiliation at the time of the intervening user's appearance." *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1311 (11th Cir. 1999) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:5, at 16–7 (1998)). The Eleventh Circuit further clarified that:

> The scope of protection enjoyed by a trademark owner is not restricted to the owner's original use. The "natural expansion" doctrine is applied to determine the proper scope of protection where a mark owner's previous use differs from its current use, and the junior use intervenes. Under this doctrine, the first trademark owner's rights are limited to goods on which the mark has already been used or that lie within the realm of natural expansion; "this appears to be no more than a specific application of the familiar 'related goods' test."
>
> The court in *Tally–Ho* explained that a senior user's rights "may extend into uses in 'related' product or service markets (termed the 'related goods doctrine')," and that "an owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of the mark on such related uses." This rule is limited by equitable considerations . . . . The court in *Carnival* noted that "a trademark owner cannot by the normal expansion of its business extend the use or registration of its mark to distinctly different goods or services not comprehended by its previous use . . . where the result could be a conflict with valuable intervening rights established by another through extensive use . . . of the same or similar mark for like or similar goods and services."
>
> Courts determine the proper scope of protection of a mark in the context of intervening uses by applying the "source or sponsorship" test. Under this test, a trademark owner has "protection against use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." The public perception in this regard is determined at the time the junior user first used the mark on the product or service to which the allegedly infringing mark is affixed. The court in *Tally–Ho* explained that "related use" is "merely a facet of the likelihood of confusion test and therefore requires an inquiry into [the] seven factors affecting the likelihood of confusion . . . ."

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201–02 (11th Cir. 2001) (citations omitted). What is more:

> The theory of "natural expansion" as applied to determinations of the scope of protection "relates to a

7

> situation where the senior user of mark A on product line X expands use of mark A to product line Z and conflicts with an 'intervening junior user' who has already been using mark A on product line Z." This differs from the "natural expansion" doctrine as applied to determining the geographical delimitation of common law trademark rights.
>
> The "natural expansion" thesis seems to be nothing more than an unnecessarily complicated application of the likelihood of confusion of source or sponsorship test to a particular factual situation. If the intervening use was likely to cause confusion [with respect to the mark owner's previous use], it was an infringement and the senior user has the right to enjoin such use, whether it had in fact already expanded itself or not.

*Planetary Motion*, 261 F.3d at 1201 n.23 (citations omitted).

With this background in mind, the Court agrees with Plaintiff that if Defendants admit they are the junior users in this context and that they "are simply claiming that there is no likelihood of confusion, that is not a natural zone of expansion doctrine as that defense . . . would be available to anyone." (Doc. 20, p. 14). Put more accurately, if this or some similar defense is what Defendants intend, Defendants need not replead their answer as this defense would be an attempt to show the elements of the underlying claim will not be factually satisfied: this defense could be raised at the appropriate procedural juncture regardless of its inclusion as an affirmative defense. If Defendants intend for some other meaning not expressly contemplated here, the repleading of their affirmative defense should contain a much greater degree of factual and legal specificity to better put Plaintiff on notice of the theory by which Defendants hope to stave off Plaintiff's claims so that the parties can focus their efforts in discovery accordingly. *Hernandez-Hernandez v. Hendrix Produce, Inc.*, No. 6:13-cv-53, 2014 WL 726426, at *3 (S.D.

Ga. Feb. 24, 2014) (noting "[a]ffirmative defenses perish when they do not" "guarantee[] that the opposing party has notice of any additional issue that may be raised at trial") (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)).

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion (Doc. 20) is **GRANTED IN PART**;
2. Defendants' third affirmative defense stating "Defendant has been selling goods that are in the natural zone of expansion, as related to its 'Rhino' brand of tires, wheels, hubs, or related accessories" in both Defendant Answers (Doc. 17, p. 6; Doc. 18, p. 6) is hereby **STRICKEN**; and
3. Defendants may file amended answers on or before March 21, 2023, consistent with the directives of this Order and Federal Rule of Civil Procedure 11.

**DONE AND ORDERED** in Orlando, Florida on March 7, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties