UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WHEEL PROS, LLC,

    Plaintiff,

v.       Case No: 6:22-cv-2171-JSS-EJK

RHINO TIRE USA, LLC, QINGDAO
RHINO INTERNATIONAL CO.,
LTD., QINGDAO RHINO INT'L CO.,
LTD and WILLIAM YI,

    Defendants.
_____/

## ORDER

Plaintiff moves to strike the testimony and opinions of Defendant's rebuttal expert Henry D. Ostberg, Ph.D. pursuant to Federal Rule of Evidence 702. (Motion, Dkt. 92.) Defendants oppose the Motion. (Dkt. 100.) The court held an evidentiary hearing on the Motion on July 10, 2024. (Dkt. 142.) Upon consideration, Plaintiff's Motion is denied.

## BACKGROUND

Plaintiff brings this action against Defendants for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114–19, 1125(a); common law trademark infringement; common law unfair competition; violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*; for cancellation of Defendant's registered trademarks; and for damages resulting from Defendants'

alleged false or fraudulent registration of its trademarks. (Dkt. 46.) Plaintiff and Defendants are engaged in the business of selling wheels and tires for vehicles and each owns trademarks in its respective brand. (*Id.* ¶¶ 15, 23, 103.) Plaintiff owns various trademarks related to its "Black Rhino" brand and Defendants own trademarks for their "Rhino" brand. (*Id.* ¶¶ 17–31.) According to Plaintiff, Defendants' trademarks infringe on its trademarks in part because the public is likely to be confused by the similarities between the marks. (*Id.* ¶¶ 103–11.) The matter has proceeded through discovery and the parties have filed cross motions for summary judgment. (Dkts. 90, 93.)

In support of its case, Plaintiff proffered the expert report of Dr. Robert A. Peterson. (Dkt. 92 at 2–4.) Dr. Peterson conducted a forward likelihood of confusion survey designed to determine the likelihood of confusion between Plaintiff's "Black Rhino" trademarks and Defendant's "Rhino" trademarks within a target universe of survey respondents. (*Id.*; Dkt. 92-1 at 5–20.) Dr. Peterson described his survey as following "the modified sequential lineup approach," which consisted of exposing one group of respondents, the "assessment" or "test" group, to Plaintiff's and Defendant's trademarks and exposing another group of respondents, the "control" group, to Plaintiff's mark and a non-infringing mark. (Dkt. 92-1 at 5.)[1] Each respondent was then asked the same "operative likelihood of confusion questions." (*Id.* at 6.) Dr.

---

[1] Dr. Peterson's survey and methodology were based in part on the decision of the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office in *Ava Enterprises, Inc. v. Audio Boss USA, Inc.*, 77 U.S.P.Q.2d 1783 (T.T.A.B. 2006). (Dkt. 92-1 at 5 n.3.)

Peterson's survey found that within the assessment group, 78.7% of participants were likely to confuse Plaintiff's trademarks and Defendant's trademarks, and within the control group, 51.7% of participants were likely to confuse Plaintiff's trademark and the non-infringing mark. (*Id.* ¶ 15.) Dr. Peterson thus concluded that there was a 27% net likelihood of confusion (with a confidence range of 22.8% to 31.2%) between Plaintiff's "Black Rhino" trademark and Defendants' "Rhino" trademark, which he described as a "significant likelihood of confusion." (*Id.* at 20.)

In rebuttal to Dr. Peterson's report, Defendants proffered the expert report of Dr. Henry D. Ostberg. (Dkt. 92-1 at 112–24.) Dr. Ostberg offered five opinions as to what he termed "significant problems and fatal defects" with Dr. Peterson's survey. (*Id.* at 4.) Dr. Ostberg stated that Dr. Peterson's survey: (1) was conducted with an improper research design; (2) relied on interviews with the wrong survey respondents; (3) improperly changed research designs; (4) relied on inappropriate statistical calculations; and (5) is called into doubt by its own internal data. (*Id.* at 115–22.) Dr. Ostberg's report concluded that in his professional opinion, Dr. Peterson's survey "lacks reliability and validity, providing no scientific basis for its findings" and therefore does not have "any meaningful evidentiary value." (*Id.* at 123.)

Plaintiff now moves to exclude Dr. Ostberg's rebuttal expert report and preclude him from testifying at trial pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993). (Dkt. 92.) Defendants oppose the Motion. (Dkt. 100.) On July 10, 2024, the court held an evidentiary *Daubert* hearing

at which it heard testimony from Dr. Ostberg and Dr. Peterson and accepted evidence offered by the parties. (Dkts. 142, 143.)

## APPLICABLE STANDARDS

In determining the admissibility of expert testimony under Federal Rule of Evidence 702, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007); *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010)). A determination of admissibility requires findings that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert*]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). However, courts must not "improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden

of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Moore*, 995 F.3d at 850 (quoting *Daubert*, 509 U.S. at 596).

## ANALYSIS

### A. Dr. Ostberg's Qualifications to Testify

The basic *Daubert* requirements of "qualification, reliability, and helpfulness [are] distinct concepts and the courts must take care not to conflate them." *Moore*, 995 F.3d at 851 (quoting *Frazier*, 387 F.3d at 1260). With respect to the first prong, the expert must be "qualified to testify competently regarding the matters he intends to address." *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa*, 158 F.3d at 562). "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260–61 (citing Fed. R. Evid. 702). However, "[i]f the [expert] witness is relying solely or primarily on experience, then the [expert] witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts" *Id.* at 1261 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)).

Here, Dr. Ostberg's testimony is proffered as a rebuttal expert to address the reliability and methodology of Dr. Peterson's forward likelihood of confusion survey. Plaintiff argues that Dr. Ostberg is not qualified because he testified and stated in his report that he was not familiar with Dr. Peterson's methodology. (Dkt. 92 at 7–12.) The court disagrees.

In an action for trademark infringement, "[s]urvey evidence is one way a party can demonstrate a likelihood of trademark confusion." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 19-10771, 2021 WL 4438518, at *11 (11th Cir. Sept. 28, 2021) (citing *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019)). Consumer surveys, such as the one proffered by Dr. Peterson, "present images and other information to participants and solicit responses to determine whether there is a likelihood of trademark confusion." *Id.* (citing *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 506–507 (5th Cir. 1980)). When survey evidence is introduced in trademark litigation:

> [t]he usual procedure is for one of the parties to the litigation to hire a survey taker to run an appropriate survey. The survey expert for the opponent may then attack the substance and form of the other side's survey and/or counter it with a different survey producing different results. Then ensues the "battle of the experts," a process that takes place in many trials of all kinds.

McCarthy on Trademarks and Unfair Competition § 32:158 (5th ed.). "If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)).

Based on his experience, education, and training, Dr Ostberg is sufficiently qualified to rebut Dr. Peterson's survey methodology. Dr. Ostberg has over 40 years

of experience in conducting marketing research and has conducted or overseen over 2,000 consumer surveys for various clients over that time. (Dkt. 92-1 at 113.) He earned an M.B.A. degree and a Ph.D. degree in marketing from Ohio State University and earned an L.L.B. law degree from New York Law School. (*Id.*) Dr. Ostberg has further been retained as a marketing research expert in connection with trademark and intellectual property litigation in over 200 cases, has been a frequent speaker "on the subject of marketing, the use of surveys and related topics before a variety of professional organizations," and was on the faculty of both New York University and Ohio State University. (*Id.* at 113–14.)

At his deposition, Dr. Ostberg testified that he was not familiar with Dr. Peterson's "modified sequential evaluation" approach. *E.g.*, (Dkt. 92-1 at 133:21–24.) However, Dr. Ostberg made these statements based on his experience in the field of conducting surveys in similar circumstances rather than due to any purported lack of experience or qualification. Indeed, as Dr. Ostberg testified at the hearing, he based his statements on courts' recognition that "[t]here are two major types of surveys experts use in trademark cases to aid in establishing the 'likelihood of confusion' element," the *Ever-Ready* survey and the *Squirt* survey. *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, No. 18-CV-81606, 2019 WL 7376782, at \*3 (S.D. Fla. Sept. 26, 2019). The reliability of the method used in Dr. Peterson's survey is not presently before the court, but upon consideration of Dr. Ostberg's qualifications, he is sufficiently qualified to criticize that methodology in his rebuttal

report and at trial.  *See Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 2103074, at *3 (M.D. Fla. May 25, 2021) ("Dr. Befurt's experience in consumer marketing research and survey design methodologies makes him 'minimally qualified' to testify about the methodologies Mr. Mauro employed in creating and administering his three surveys."); *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-78DCI, 2019 WL 12536802, at *5 (M.D. Fla. Oct. 2, 2019) (denying motion to exclude expert that "has ample experience in scientific surveying and research").

### B. Reliability of Opinions

Plaintiff challenges the reliability of each of Dr. Ostberg's proffered opinions and argues that they are not supported by a sufficiently reliable methodology. (Dkt. 92 at 12–22.)  Upon consideration, the court finds each opinion to be sufficiently reliable.

*Daubert*'s reliability prong concerns "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *Daubert,* 509 U.S. at 592–93). However, "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)).  The district court "must have considerable leeway in deciding

in a particular case how to go about determining whether particular expert testimony is reliable" and may find that nonscientific expert testimony is reliable based "upon personal knowledge or experience." *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 151–52). Indeed, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." *See* Fed. R. Evid. 702 advisory committee's note (2000 amends.); *Kumho Tire, Co.*, 526 U.S. at 156 ("No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). In determining reliability, the district court must focus "solely on principles and methodology, not on the conclusions that they generate." *Seamon*, 813 F.3d at 988 (quoting *Daubert,* 509 U.S. at 595).

### 1. Improper Research Design

Dr. Ostberg opined that Dr. Peterson's survey employed an improper research design because: (1) the survey failed to adequately simulate market conditions by comparing wheels for the Plaintiff and tires for the Defendant when such products would only been seen together in the marketplace in "rare circumstances" and (2) the survey improperly deviates from the *Squirt* method by showing the two trademarks in close succession without creating any "distraction" in the mind of the survey respondent. (Dkt. 92-1 at 115–18.) Plaintiff argues that Dr. Ostberg's opinions are unreliable because his conclusions about the products being of different categories was not based on his status as an expert or any research into that area, he was not familiar with the method employed by Dr. Peterson, and he mischaracterized the way in which

Dr. Peterson's survey was conducted. (Dkt. 92 at 13–16.) Upon consideration, the court finds this opinion to be sufficiently reliable.

In rendering this opinion, Dr. Ostberg specifically cited McCarthy on Trademarks and Unfair Competition § 32:163 (5th ed.) and Jerre B. Swann, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, 98 Trademark Rep. 739 (2008), as well as case law discussing survey methods. (Dkt. 92-1 at 115–18); *see Superior Consulting Servs., Inc.*, 2021 WL 4438518, at *11 (citing McCarthy in affirming district court's *Daubert* ruling); *Pinnacle Advert. & Mktg. Grp., Inc.*, 2019 WL 7376782, at *3 (relying on McCarthy and Swann article to find expert survey opinion unreliable). Rather than simply parroting assertions made by counsel, Dr. Ostberg further relied on his experience in conducting surveys under similar circumstances, his review of Defendants' website in marketing its products, conversations with Defendants' attorney, and his experience as a consumer to conclude that the methodology employed by Dr. Peterson was inappropriate. (Dkt. 92-1 at 138:2–144:9); *cf. Delta T, LLC*, 2021 WL 2103074, at *4 (excluding as unreliable expert's opinion that was "simply repeat[ing] counsel's opinion or analysis"). Dr. Ostberg's methodology in criticizing Dr. Peterson's research design was thus sufficiently reliable to permit his testimony at trial. *See Superior Consulting Servs., Inc.*, 2021 WL 4438518, at *11 (affirming grant of *Daubert* motion in part where survey "did not comply with the *Squirt* methodology it purported to apply"); *Delta T, LLC*, 2021 WL 2103074, at *4 (finding rebuttal expert's opinions reliable in part where "[i]n opining on the purported design

flaws in Mr. Mauro's surveys, Dr. Befurt relied on his experience and expertise, Mr. Mauro's survey reports, and academic literature on the topic of survey designs, including on survey designs in the intellectual property sphere."); *cf. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844 (11th Cir. 1983) ("These alleged technical deficiencies affect the survey's weight, however, and not its admissibility.") (citing *Exxon Corp. v. Texas Motor Exchange,* 628 F.2d 500, 507 (5th Cir. 1980)).

### 2. Wrong Respondents Interviewed

Dr. Ostberg next opined that Dr. Peterson's survey was flawed because it failed to base its data on respondents who were likely to be future purchasers of Defendants' products. (Dkt. 92-1 at 118–20.) According to Dr. Ostberg, "[u]nless past purchasers are also future purchasers, who intend to repurchase the product with the trademark at issue, they are not proper respondents in a likelihood of confusion survey." (*Id.* at 118.) In support, Dr. Ostberg again relies on McCarthy on Trademarks and Unfair Competition, as well as the Reference Manual on Scientific Evidence, p. 377 (Federal Judicial Center, 3d ed. 2011), and cites various court cases supporting this principle. (*Id.* at 118–20.) Upon consideration of this opinion, the court finds Dr. Ostberg's methodology in raising such "technical deficiencies" with Dr. Peterson's survey pursuant to the prevailing literature and practice to be sufficiently reliable to survive Plaintiff's *Daubert* motion. *See, e.g.*, *Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, No. 8:12-cv-01479-T-27, 2014 WL 2625297, at \*2–3 (M.D. Fla. June 12, 2014) ("PEI perceives multiple technical deficiencies in Dr. Wood's survey, including an improper universe

of respondents and improper questioning. Such technical deficiencies go to the weight of Dr. Wood's opinions, not their admissibility.") (citing *Jellibeans, Inc.*, 716 F.2d at 844–45); *Orange Lake Country Club, Inc.*, 2019 WL 12536802, at *5 ("With respect to the reliability of Dr. Naidoo's opinions and helpfulness to the jury, Plaintiffs' arguments likewise are better addressed on cross-examination than by motion to exclude.").

### 3. Research Design Changed Midway

Dr. Ostberg again relies on McCarthy on Trademarks and Unfair Competition to criticize Dr. Peterson's use of a pilot study that resulted in a change to the survey. (Dkt. 92-1 at 120.) In particular, Dr. Ostberg states that Dr. Peterson's report failed to include a "credible explanation" for modifying his survey after the pilot study. (*Id.*) Dr. Ostberg also testified that he relied on his "[c]ommon sense and general practice" from his experience in the field to generate this opinion. (Dkt. 92-1 at 148:8–151:15.) The court finds Dr. Ostberg's methodology in reaching this opinion sufficiently reliable. Plaintiff's arguments challenging this opinion largely go towards whether Dr. Ostberg reached the right conclusion in applying his method and are therefore inappropriate to justify excluding Dr. Ostberg at this stage. Indeed, Plaintiff proffered Dr. Peterson's response report to Dr. Ostberg's rebuttal, which specifically responds the deficiencies noted in Dr. Ostberg's report. (Dkt. 92-1 at 158–66.) With respect to the methodology of Dr. Peterson's survey, the parties have thus presented a "'battle of the experts,' a process that takes place in may trials of all kinds" and any purported

deficiencies in Dr. Ostberg's opinions are more appropriate to be addressed on cross-examination of Dr. Ostberg at trial. McCarthy on Trademarks and Unfair Competition § 32:158 (5th ed.); *see Seamon*, 813 F.3d at 988; *Nview Health, Inc. v. David V.*, No. 8:21-cv-385-VMC-TGW, 2022 WL 16923585, at *9 (M.D. Fla. Nov. 14, 2022) ("The Court's analysis as to reliability focuses solely on principles and methodology, not on the conclusions that they generate.") (cleaned up).

### 4. Inappropriate Statistical Calculations

Dr. Ostberg also opined regarding the statistical calculations in Dr. Peterson's survey. (Dkt. 92-1 at 121.) Specifically, Dr. Ostberg noted that Dr. Peterson's survey "did not have a probability sample," yet the statistical calculations used are "applicable only to surveys based on true probability samples of respondents, according to many statistical texts." (*Id.*) In support, Dr. Ostberg again cited to sections of McCarthy on Trademarks and Unfair Competition. (*Id.*) Plaintiff argues that this opinion is not reliable because Dr. Ostberg offers only "opaque conclusions" and admitted in deposition that he had never taught or taken a statistics class. (Dkt. 92 at 20–21.) The court disagrees and finds this opinion supported by a reliable methodology.

Dr. Ostberg's analysis is grounded in his experience conducting consumer surveys in trademark litigation, as well as scholarly literature regarding the type of statistical analysis necessary in the survey conducted by Dr. Peterson. *See* McCarthy on Trademarks and Unfair Competition § 32:164 (5th ed.) ("While each type of sample can reasonably be projected to the universe at large, only a probability sample can be

projected to the entire universe by the use of definite mathematical and statistical probability models."). The court finds Dr. Ostberg's method sufficiently reliable to permit his testimony and Plaintiff may raise any issues it has with that method on cross examination. *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *10 (M.D. Fla. Aug. 31, 2017) ("Usually, objections based on flaws in the survey's methodology are properly addressed by the trier of fact.") (quoting *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011)); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'") (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).

### 5. Internal Data Casts Doubt on the Validity of the Findings

Finally, Dr. Ostberg opined that the data collected in Dr. Peterson's control group survey casts doubt on the validity of the survey itself because a 51.7% likelihood of confusion between Plaintiff's trademark and the non-infringing control mark was abnormally high. (Dkt. 92-1 at 122.) Dr. Ostberg's conclusion in this opinion does not cite to specific authority, but rather impliedly relies on his own education and experience with conducting similar surveys for over four decades. As with Dr. Ostberg's other opinions, the court finds this opinion sufficiently reliable to preclude exclusion of the opinion at this stage. *See, e.g.*, *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2016 WL 8793317, at *16 (S.D. Fla. Jan. 7, 2016) (rejecting argument that

expert's rebuttal opinion should be excluded because he failed to cite authority where expert's "interpretation of [survey] data and his critiques of the technical aspects of the survey will assist the trier of fact in determining the weight, if any, to give to [the] survey"); *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2022 WL 3226774, at *6 (M.D. Fla. Aug. 10, 2022) (denying in part *Daubert* motion to exclude "expert in marketing and consumer research surveys being offered to critique the alleged design flaws" in opposing party's survey).

### C. Helpfulness to Trier of Fact

Finally, Plaintiff argues that because Dr. Ostberg's opinions are not based on a reliable methodology, those opinions will not be helpful to the jury and should be excluded. (Dkt. 92 at 12–22.) The court disagrees.

"The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact." *Frazier*, 387 F.3d at 1262. To establish this requirement, the expert testimony must "concern[] matters that are beyond the understanding of the average lay person." *Id.* (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir. 1985)). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Id.* at 1262–63.

Here, Dr. Ostberg is being proffered to criticize Dr. Peterson's forward likelihood of confusion survey, a technical matter in which Dr. Ostberg has sufficient experience and that is beyond the understanding of the average lay person. *See Delta*

*T, LLC*, 2021 WL 2103074, at *5 ("[T]he Court finds that an expert's opinion of the methodologies [] utilized in creating [a] novel survey would assist the jury"); *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2019 WL 1977514, at *6 (S.D. Fla. Feb. 28, 2019) ("Given that Dr. Fisher has extended experience in survey methodology, the Court finds that his critique of Buncher's survey will be helpful to the trier of fact."); *Wreal, LLC*, 2016 WL 8793317, at *16 ("Dr. Maronick's interpretation of Amazon's data and his critiques of the technical aspects of the survey will assist the trier of fact in determining the weight, if any, to give to Dr. Sarel's survey."). Dr. Ostberg's opinions will thus assist the jury at trial and will not be excluded on this basis.

## CONCLUSION

Accordingly, upon consideration and for the reasons discussed above, Plaintiff's *Daubert* Motion to Strike Testimony and Opinions of Henry D. Ostberg, Ph.D. (Dkt. 92) is **DENIED**.

**ORDERED** in Orlando, Florida, on July 18, 2024.

                                                             _____
                                                             JULIE S. SNEED
                                                             UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record